**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Clarence McCoy, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT AND OTHER EQUITABLE RELIEF** |
| Diversified Adjustment Service, Inc., | |
| Defendant. | **JURY TRIAL DEMANDED** |

## PARTIES

1.  Plaintiff, Clarence McCoy ("Clarence"), is a natural person who resided in Chicago, Illinois, at all times relevant to this action.

2.  Defendant, Diversified Adjustment Service, Inc. ("DAS"), is a Minnesota corporation that maintained its principal place of business in Coon Rapids, Minnesota, at all times relevant to this action.

## JURISDICTION AND VENUE

3.  Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4.  Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

5.  At all times relevant to this action, DAS collected consumer debts.

1

6. DAS regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

7. The principal source of DAS's revenue is debt collection.

8. DAS is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9. As described, *infra*, DAS contacted Clarence to collect a debt that was incurred primarily for personal, family, or household purposes.

10. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

11. Clarence is a "consumer" as defined by 15 U.S.C. § 1692a(3).

12. In 2010, Clarence incurred a debt with T-Mobile because of an outstanding cellular phone bill.

13. Since 2010, Clarence has not been a T-Mobile Customer.

14. In February 2022, DAS began reporting the debt on Clarence's credit report.

15. The information DAS furnished to the credit bureaus was false and inaccurate.

16. Prior to reporting the inaccurate information on Clarence's credit report, Clarence received no written communication from DAS advising him of the impending credit reporting.

17. Upon noticing the incorrect information reported by DAS, Clarence placed a telephone call to DAS.

18. Within five days after speaking with Clarence, DAS failed to send Clarence a validation notice.

19. During this call, Clarence explained that the information DAS was reporting was inaccurate.

20. During this call, Clarence explained that he wanted the account off his credit report.

21. DAS was unable to explain why it had placed this debt on Clarence's credit report.

22. Then, DAS demanded payment to correct Clarence's credit report.

23. Clarence then disputed the debt with DAS.

24. DAS refused to process Clarence's dispute, and instead, directed Clarence to dispute the debt himself using DAS's dispute portal.

25. It is DAS's policy and procedure to ignore consumers debt disputes made over the telephone.

26. DAS followed its policy and procedure, here.

27. It is the DAS's policy and procedure to require consumers that dispute debts using DAS's dispute portal to consent to receiving robocalls and text messages.

28. Because of this, Clarence declined from submitting his own dispute using DAS's website.

29. Despite receiving Clarence's dispute, DAS did not mark the debt in a disputed status with the credit bureaus.

30. Despite receiving Clarence's dispute, DAS did not notify the creditor that the debt was disputed.

31. Clarence then requested something in writing evidencing the debt and to ensure DAS was a legitimate debt collector.

32. The Federal Trade Commission and the Consumer Financial Protection Bureau encourage consumers to request information about alleged debts from debt collectors in writing.

33. DAS refused to send Clarence anything, indicating that DAS already mailed a letter to an address Clarence lived at over ten (10) years ago.

34. Instead, DAS demanded Clarence to request information about the debt himself using DAS's website portal.

35. It is DAS's policy and procedure to ignore consumers verification requests made over the telephone.

36. DAS followed its policy and procedure, here.

3

37. It is the DAS's policy and procedure to require consumers that request information about alleged debts using DAS's debt portal to consent to receiving robocalls and text messages.

38. Because of this, Clarence declined from requesting information about the debt using DAS's website.

39. Because of DAS's refusal to properly process Clarence's dispute, Clarence's credit report remains inaccurate.

40. DAS's collection efforts, including reporting the inaccurate tradeline on Clarence's credit report, harmed his ability to secure credit.

41. DAS's collection efforts, including placing the inaccurate tradeline on Clarence's credit report, impacted his ability to obtain favorable interest rates on previously established credit.

42. Because of DAS's collection efforts, Clarence purchased an online Collection Abuse Education course to learn Debtor Rights.

43. Because of DAS's collection efforts, Clarence retained an attorney and has incurred attorney fees in this claim.

44. DAS's collection efforts caused Clarence emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

45. DAS's collection efforts also intruded upon Clarence's privacy.

46. DAS's collection efforts constituted libel against Clarence.

47. DAS's conduct also caused Clarence to lose time by having to defend DAS's illegal debt collection techniques.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

48. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 47 above as if fully set forth herein.

49. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

50. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

51. The likely effect of Defendant's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Plaintiff.

52. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

53. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 47 above as if fully set forth herein.

54. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA. *See Anchondo v. Anderson,*

*Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee. If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

55. Defendant's policies and procedures, as described in Paragraphs 24 through 36 *supra*, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

56. Defendant's practice, therefore, violates Section 1692d of the FDCPA, which provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

*See* 15 U.S.C. §1692d.

57. Because Defendant's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

58. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 47 above as if fully set forth herein.

59. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## <u>COUNT FOUR</u>

### <u>Violation of the Fair Debt Collection Practices Act</u>

60. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 47 above as if fully set forth herein.

61. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## <u>COUNT FIVE</u>

### <u>Violation of the Fair Debt Collection Practices Act</u>

62. Plaintiff re-alleges and incorporates by reference Paragraphs 5 through 47 above as if fully set forth herein.

63. Defendant violated 15 U.S.C. §1692g by failing to send Plaintiff the required notice within five days of Defendant's initial communication with Plaintiff.

## <u>JURY DEMAND</u>

64. Plaintiff demands a trial by jury.

## <u>PRAYER FOR RELIEF</u>

65. Plaintiff prays for the following relief:

    a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. For such other legal and/or equitable relief as the Court deems appropriate.

Date: April 14, 2022                    By:____/s/ Jeffrey S. Hyslip____
                                        Jeffrey S. Hyslip, Esq.
                                        Hyslip Legal, LLC
                                        1309 Park St., Suite A
                                        McHenry, IL 60050
                                        Phone: 614-490-4224
                                        Email: jeffrey@hysliplegal.com

                                        *Attorney for Plaintiff*